**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 10-176 (WOB)**

**ERNEST SMITH**                                                            **PLAINTIFF**

**VS.**                      **MEMORANDUM OPINION AND ORDER**

**ALTERNATIVE PLASTICS SERVICES,
INC., ET AL**                                              **DEFENDANTS**

This matter is before the Court on defendants' motion for summary judgment (Doc. 30, supplemented by 41).

The Court heard oral argument on this motion on Wednesday, January 25, 2012. Suzanne Cassidy represented the plaintiff, and Douglas Holland represented the defendants. Also present were Dennis Boyer and Richard Smith. Official court reporter Joan Averdick recorded the proceedings.

*Factual and Procedural Background*

Plaintiff Ernest Smith ("Smith") is an African-American male who was born July 4, 1949. (Smith Depo. I at 6)[1]. Smith did not complete high school but he completed a GED during military service. (*Id.*). In the 1970s, Smith's home caught fire, killing his wife and several family members and leaving Smith with severe burns and permanent injuries to his hands.

---

[1] Smith was deposed twice in this case, once on January 10, 2011 (Doc. 32) and once on August 11, 2011 (Doc. 42). The first transcript is referred to as "Smith Depo. I" and the second as "Smith Depo. II."

(*Id.* at 8-9).

Prior to this fire, Smith had no vocational training. Following the fire, Smith qualified for supplemental Social Security disability benefits and was sent to a rehabilitation center for job training. (*Id.* at 10-12).

While working at the rehabilitation center in 1973, Smith met Dennis Boyer ("Boyer"), who was a sales manager. A couple of years later, Boyer got Smith a job at a company called Watco which was owned by Boyer's father-in-law. (Smith Depo. I at 17-18). At Watco, Smith was trained as a skilled machinist.

Watco went out of business after several years. Boyer subsequently helped plaintiff get several other jobs, including one at Cincinnati Plastics Recycling where Boyer was an office manager. Richard Smith, with whom plaintiff also had worked at the rehabilitation center, was the plant manager.

At Cincinnati Recycling, Boyer and Richard Smith made plaintiff a supervisor over approximately 15-20 employees, most of whom were white. (Smith Depo. I at 28, 32). Cincinnati Recycling closed in 1992.

In 1995, after Boyer and Richard Smith opened their own recycling business called Alternative Plastics Services, Inc., they contacted plaintiff and asked him to come to work at the company. (Smith Depo. I at 32). Plaintiff was hired as a grinder operator and then promoted several times, eventually

becoming the Production Supervisor over approximately 30 people. (*Id.* at 33). Plaintiff was the highest paid hourly employee at APS.

In 2000, APS had a business shutdown due to lack of work, but it kept plaintiff on the payroll, and he was the only hourly employee that was not laid off, even though production was stalled. (Boyer Aff. ¶ 8(E), Doc. 31 at 10).

Plaintiff suffered two heart attacks while employed at APS, one in 1997 and one in 2006. (Smith Depo. I at 45). In 2007, plaintiff had a pacemaker implanted. After each illness, APS did whatever was necessary to return plaintiff to work. (Smith Depo. I at 47).

Plaintiff testified that he was treated "good" while employed at APS and that he "wouldn't dispute" that Boyer went out of his way over the years to help him. (Smith Depo. I at 43).

In late 2008, due to the economy, the recycling business became very slow. APS eventually went bankrupt, and its last day of production was March 13, 2009. (Smith Depo. I at 35). Plaintiff was one of the last employees to be laid off. (*Id.* at 39).

Following the closing of APS, Boyer and Richard Smith opened a much smaller recycling business, called In-Plas, Inc., in an existing facility they owned in Lawrenceburg, Indiana.

The positions of general manager, production supervisor, record manager, and line supervisor as they had existed at APS were combined at In-Plas into a single position occupied by Shawn Feldkamp, who had been APS's salaried Production Manager. There is no Production Supervisor job at In-Plas. (Boyer Depo. at 22).

During the summer of 2009, Smith went to In-Plas in Indiana and spoke with Boyer. Smith did not ask to fill out an application, but he inquired about work opportunities. (Boyer Depo. at 42). Boyer told plaintiff that there was no floor supervisor position there such as he had held at APS. (Smith Depo. I at 64; Boyer Depo. at 43-44). Boyer testified that, based on his knowledge of plaintiff's employment at APS, he did not believe that plaintiff was physically able to do the heavy manual labor of the non-supervisory line jobs at In-Plas. (Boyer Depo. at 43-45). Boyer told plaintiff that if they opened up another plant or got a bigger plant where they needed a supervisor, then they would hire him back. (Boyer Depo. at 43). Plaintiff did not indicate that he would be willing to work as a laborer. (*Id.*).

On August 18, 2009, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Doc. 31-1) and an Amended Charge on September 22, 2009 (Doc. 13-3). On May 24, 2010, plaintiff's attorney wrote to the EEOC and

requested that it issue a right-to-sue letter and dismiss Smith's charge. (Doc. 31-4). The EEOC dismissed the charge the following day. (Doc. 31-5).

Plaintiff filed this action on August 20, 2010, alleging claims of race, age, and disability discrimination. (Doc. 1). Plaintiff named as defendants APS, In-Plas, and Boyer and Richard Smith individually.

During a mediation, defendants learned that plaintiff had applied for and been granted Social Security total disability benefits, with an effective date of March 19, 2009. That determination, rendered on February 23, 2010, was based on plaintiff's "chronic heart failure." (Doc. 41-1).

Following discovery, defendants filed a motion for summary judgment as to all claims. In response, plaintiff dismissed Smith and Boyer as defendants and abandoned all claims save his claim for disability discrimination in the failure to be hired at In-Plas. (Doc. 45, n. 1, 2).[2]

### *Analysis*

**A.  Social Security Disability Benefits**

A claim for disability discrimination requires that the plaintiff show, inter alia, that he is "qualified" for the position in question, with or without reasonable accommodation.

---

[2] Plaintiff's disability claim is based on his heart condition, not on the condition of his hands. (Smith Depo. I at 58).

5

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999).

A "plaintiff's sworn assertion in an application for disability benefits that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case – at least if [he] does not offer a sufficient explanation." *Id.* at 806.

In *Cleveland*, the Supreme Court held that an ADA plaintiff "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." Rather:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. *To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."*

*Id.* at 807 (emphasis added).

Applying *Cleveland*, courts have concluded that plaintiffs who applied for and received "total disability" benefits could nonetheless show that they were "qualified" for purposes of the ADA where they suggested accommodations that would enable to perform the job, *see Olds v. United Parcel Serv., Inc.*, 127 F. App'x 779, 784 (6th Cir. 2005), or where they received benefits based solely on the fact that they suffered from a listed impairment which required no analysis of their actual ability to

6

work, *see Kiely v. Heartland Rehab. Serv., Inc.*, 359 F.3d 386, 390 (6th Cir. 2004) (plaintiff legally blind).

However, where a plaintiff has represented that he was totally incapable of working at the time of the employment decision he wishes to challenge in an ADA suit, and he fails to explain how he could have been otherwise "qualified" for the position in question, courts have held that he cannot satisfy this essential element of his claim as a matter of law. *See Neview v. D.O.C. Optics Corp.*, 382 F. App'x 451, 459 (6th Cir. 2010); *Williams v. London Utility Comm'n*, 375 F.3d 424, 429-30 (6th Cir. 2004).

Here, plaintiff applied for total disability benefits from the SSA in the fall of 2009, identifying "Conjestive [*sic*] heart failure fibulator" as the illness or condition that limits his ability to work. (Doc. 41-2 at 2). Plaintiff stated that he became unable to work because of this condition on March 13, 2009. (*Id.*).

In a Report of Contact memorializing an interview with plaintiff, the SSA Disability Examiner stated: "Clt doesn't walk to [*sic*] far bc he'll get heated up he guesses about a block and a half. He sometimes gets short of breath." (Doc. 41-4 at 1). She also stated: "He says if he exerts himself too much he has to rest for about an hour or so." (*Id.*).

In its Vocational Analysis, the SSA states that plaintiff

"is precluded from climbing ladders, ropes, or scaffolds, and from more than frequent climbing ramps or stairs, and should try to avoid exposure to extreme cold/extreme heat, humidity, unprotected heights, hazards, and machinery." (Doc. 41-3 at 1).

On February 23, 2010, the SSA issued its Disability Determination and Transmittal concluding that plaintiff was totally disabled due to "chronic heart failure" as of March 13, 2009. (Doc. 41-1).

Plaintiff was questioned about this matter in a deposition in this case on August 11, 2011:

> Q. Were you truthful with the Social Security Administration in your application for Social Security disability?
>
> A. Yes.
>
> Q. Have you been found to be totally and permanently disabled by the Social Security Administration?
>
> A. Yes.
>
> **Q. Are you totally and permanently disabled?**
>
> **A. Yes.**

(Smith Depo. II at 9) (emphasis added).

> Q. And is it your testimony as of September of 2009 you were totally and permanently disabled from doing any type of gainful employment?
>
> A. Yes.
>
> Q. And were you ever totally disabled prior to that date?
>
> A. Yes.

(*Id.* at 16).  The Court deems this testimony to be a judicial admission by plaintiff.

Further, despite the clear direction in the above authority, plaintiff makes no attempt to explain how, notwithstanding these representations of total disability, he could nonetheless show that he was "otherwise qualified" for a position at In-Plas in the summer of 2009.  He does not, for example, assert that he could have performed a manual labor job with some reasonable accommodation or that the SSA's finding of total disability was based on a categorical, rather than factual, determination as to his abilities.

Therefore, plaintiff cannot establish this essential element of his disability discrimination claim as a matter of law.

**B.    Failure to Show Open Position**

Plaintiff's ADA claims also fails at the summary judgment stage because it is undisputed that there was no Production Supervisor position at In-Plas such as plaintiff held at APS.  Rather, there were managerial positions and manual labor positions.

Given plaintiff's admitted physical restrictions, no reasonable jury could conclude that he was qualified to perform the manual labor positions.  Boyer was obviously familiar with plaintiff's condition, his abilities, and his limitations,

having worked with him for years both before and after the implantation of his pacemaker.  Boyer concluded that plaintiff could not perform the demanding manual labor positions, and plaintiff conceded at oral argument that he did not contradict Boyer's assessment.

Plaintiff has thus raised no triable issue that there was a position at In-Plas for which he was qualified.

Therefore, having reviewed this matter, and the Court being otherwise advised,

**IT IS ORDERED** that (1) pursuant to plaintiff's voluntary dismissal, defendants Dennis Boyer and Richard Smith be, and are hereby, **DISMISSED AS PARTIES**; and (2) defendants' motion for summary judgment (Docs. 30, 41) be, and is hereby, **GRANTED**.  A separate judgment shall enter concurrently herewith.

This 26th day of January, 2012.



Signed By:
William O. Bertelsman
United States District Judge

TIC: 12 min.